UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM BLACKFORD, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13 C 8761 |
| | ) | |
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant Federal Express Corporation's ("FedEx") motion for summary judgment brought pursuant Federal Rule of Civil Procedure 56. For the following reasons, FedEx's motion is granted.

## BACKGROUND

According to Northern District of Illinois Local Rule 56.1, "all material facts set forth in the statement required of the moving party [for summary judgment] will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1. Plaintiff William Blackford, III ("Blackford") has not filed an answer to FedEx's motion for summary judgment or filed a response to FedEx's statement of material facts. Therefore, all facts in FedEx's statement of material facts are deemed to be admitted for the purposes of this motion. L.R. 56.1; *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (stating "[t]he obligation set forth in Local

1

Rule 56.1 is not a mere formality," and that "[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.").

FedEx is an express transportation and delivery company based in Memphis, Tennessee. Blackford, an African American male, was hired by FedEx as a Package Handler in 1993. Blackford worked at FedEx's Chicago O'Hare facility on the morning shift, which began at 12:00 p.m. and ended 8:00 a.m. Blackford was promoted to Dangerous Goods Agent in 1994, followed by a Clean-up/Spill Agent in 1997, and was transferred back to Dangerous Goods Agent in 2006. During Blackford's morning shift he was supervised by Dwayne Terrell ("Terrell"), the Operations Manager of the Chicago O'Hare FedEx facility. Terrell reported to Bill Hatzold ("Hatzold") the Senior Manager of the facility.

FedEx maintains an Acceptable Conduct Policy, which is disclosed to employees in its Employment Handbook, which set forth permissible conduct and behavior that is prohibited. As part of the Acceptable Conduct Policy, the falsification of time cards may result in disciplinary action, including termination. Additionally, FedEx maintains a Time Card Policy that requires employees to keep accurate time card records, including start, break and end times. The Time Card Policy cautions employees that the falsification of time cards may result in termination.

On October 2, 2009, FedEx received an anonymous complaint through its telephonic Alert Line accusing Blackford of clocking in for work and then leaving the building for an extended period of time without clocking out. As a result of the Alert Line call, FedEx suspended Blackford with pay on October 16, 2009 pending the conclusion of an internal investigation into his misconduct. At the time of his suspension, Terrell asked Blackford for a statement regarding his actions. Blackford admitted the misconduct, explaining that he would go to his car to listen to the radio.

In the course of Terrell's investigation he reviewed Blackford's time card swipes, his employee badge used to access the facility, and video surveillance for the month of October 2009. Terrell determined that Blackford exited the facility without clocking out on October 2, 8, 13, and 14 for a minimum of 28 minutes and a maximum of an hour. Terrell concluded that Blackford exited the facility without permission to listen to his car radio while he was on-the-clock, and that his actions amounted to the falsification of his time cards. At the conclusion of his investigation, Terrell discussed his findings with members of FedEx's Human Resource Department. Terrell decided to terminate Blackford for the deliberate falsification of time cards in violation of FedEx's Acceptable Conduct Policy. Terrell terminated Blackford's employment on October 26, 2009.

Blackford filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 26, 2009, alleging race and gender discrimination with respect to the terms and conditions of his employment and his

termination.  On September 10, 2013, the EEOC issued a Right to Sue letter.  On December 9, 2013, Blackford filed the instant lawsuit alleging: (1) gender and race discrimination in violation of 42 U.S.C. §2000e *et seq.* ("Title VII"); and (2) hostile work environment in violation of Title VII and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA").  On November 25, 2014, FedEx moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id.*  The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

**DISCUSSION**

**I. Title VII**

In his complaint Blackford alleges that he experienced discrimination on the basis of his race and sex in violation of Title VII resulting in his termination from FedEx. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Blackford alleges that he was subjected to disparate treatment and a hostile work environment. The Court will examine both methods of establishing a Title VII discrimination claim.

**A. Disparate Treatment Claim (Race Discrimination)**

Blackford claims that he was subjected to racial discrimination when he was terminated on October 26, 2009. Blackford may establish a claim under Title VII by either the direct or indirect method. *Silverman v. Board of Educ. of the City of Chic.*, 637 F.3d 729, 733 (7th Cir. 2011). Blackford fails to submit any direct evidence of racial discrimination, accordingly the Court will only consider the indirect method of proof.

To prove discrimination under the indirect method, Blackford must establish that: (1) he is a member of a protected class; (2) his job performance met his employer's legitimate expectations; (3) he suffered an adverse employment action;

and (4) at least one similarly situated employee, not in his protected class, was treated more favorably. *See Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599–00 (7th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If these elements are established, discrimination is inferred and the burden of production shifts to the defendants to raise a legitimate, nondiscriminatory reason for the adverse employment action. *Naik*, 627 F.3d at 600. Once a legitimate reason is offered, the inference of discrimination is rebutted, and the plaintiff must establish that the offered reason is a pretext for unlawful discrimination. *Id.* FedEx argues that Blackford has not provided a similarly situated employee, not in his protected class, who was treated more favorably.

To determine if employees are similarly situated the Court must find that there are "sufficient commonalities on key variables between the plaintiff and the would be-comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination ." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Comparators must have "engaged in similar-not identical-conduct to qualify as similarly situated." *Perick v. Indiana Univ. Purdue Univ. Indianapolis*, 510 F.3d 681, 691 (7th Cir. 2007). "[W]hen uneven discipline is the basis for a claim of discrimination, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor," rather than the job description of cited employees. *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011).

Blackford alleges eleven individuals falsified time cards and were not terminated from their positions. However, Blackford's allegations are not supported by actual knowledge of the individuals falsifying time cards. Blackford testified that he only saw the specified individuals leave the FedEx facility at different times, but he does not know if they clocked out prior to their departures. Blackford's lack of personal knowledge of other employees engaging in time card falsification fails to establish sufficient commonalities for the purposes of establishing a similarly situated individual. *See Nehan v. Tootsie Roll Indust., Inc.*, 11 cv 646, 2014 WL 3734232 (N.D. Ill. July 23, 2014) (evidence presented to defeat summary judgment must be based on personal knowledge and must set forth specific facts showing that there is a genuine issue for trial).

Assuming arguendo that Blackford had successfully established a *prima facie* discrimination claim under the indirect method, Blackford still cannot demonstrate that FedEx's legitimate, non-discriminatory reason for terminating his employment was pretextual. To establish pretext, Blackford must show that FedEx's reasons for terminating his employment: (1) had no basis in fact; (2) did not actually motivate the decision; or (3) was insufficient to motivate the decision. *Bates v. City of Chicago*, 726 F.3d 951, 956 (7th Cir. 2013).

FedEx's Acceptable Conduct Policy and Time Card Policy both prohibit the falsification of time cards and cautions employees that such falsification can result in termination. After receiving an anonymous tip concerning Blackford's unexcused

7

absences, Terrell began investigating Blackford's conduct. Terrell relied on the time records from Blackford's employee identification card, video surveillance of the facility and parking lot, and Blackford's own admissions that he falsified his time records. Following the completion of its investigation, FedEx determined that Blackford falsified his time cards by exiting the FedEx facility to listen to his car radio without clocking out. Based on their findings, FedEx terminated Blackford for falsifying his time cards in violation of the FedEx's Acceptable Conduct Policy. Blackford has not successfully challenged his termination in light of his clear violation of FedEx's internal policy. *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (courts do not sit as super personnel departments where disappointed employees can have the merits of an employer's decision replayed to determine the best business practice); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 562 (7th Cir. 2004) (courts will not second guess the decision makers' business judgment).

Accordingly, the Court grants FedEx's motion for summary judgment on Blackford's race discrimination claim.

**B. Disparate Treatment Claim (Gender Discrimination)**

Blackford alleges that he was discriminated against based on his gender. However, during Blackford's deposition he explicitly stated that he did not believe his gender played a role in FedEx's decision to terminate him. Absent any additional evidence of gender discrimination put forth by Blackford, the record is devoid of any indication Blackford was discriminated against based on his gender. Accordingly, the

8

Court grants FedEx's motion for summary judgment on Blackford's gender discrimination claim.

**C. Hostile Work Environment Resulting in Discrimination**

Blackford alleges that his Senior Manager, Hatzold, created a hostile work environment in violation of Title VII and the IHRA. Title VII prohibits employers from permitting a work environment that is hostile to employees because of their inclusion in a protected class. *See Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002); *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir. 2001). To establish a prima facie case of hostile work environment, Blackford must show: (1) that he was subjected to unwelcome harassment; (2) that harassment was based on his race; (3) that the harassment was severe or pervasive so as to alter the conditions of his work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Zaya v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014). In determining whether the harassment was hostile, courts consider the totality of the circumstances, including such factors as the severity of the alleged harassing conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the plaintiff's performance. *Mercer v. Cook*, 527 Fed. Appx. 515, 520 (7th Cir. 2013).

During his deposition, Blackford discussed three incidents that he believes serves as the basis for a hostile work environment claim. First, Blackford was instructed by Hatzold to clean up a spill of microorganisms. Blackford initially

refused to clean up the spill because he did not believe he was qualified to clean up microorganisms. Eventually, Blackford relented and cleaned up the spill. Blackford was not disciplined and he stated that he did not believe that the incident was a result of his race. Second, in 2008, Blackford testified that Hatzold instructed him to contact a beverage manufacturer after a shipment of soda broke apart during transit. Blackford did not believe that contacting the beverage manufacture was his responsibility because the beverages were not dangerous goods. Blackford performed the task and he was not disciplined. Finally, Hatzold interrupted Blackford while he was "bunching up dangerous goods for distribution to show him a picture of a spill in the back of a FedEx vehicle."

Blackford's claims fail due to the complete lack of racial animus. Blackford admits that he had "no idea if the harassment was based on his race." He also admits that Hatzold never used any profanity or racially derogatory language towards him. Blackford thought that the three incidents were due to his unwillingness to "bow down" to Hatzold. Since the alleged harassment was based on factors other than race, Blackford cannot prevail on his hostile work environment claim. *Gosey v. Aurora Med. Ctr.*, 749 F.3d 03, 605 (7th Cir. 2014) (inability to point to evidence that the harassment was based on race is fatal to claim). Blackford alludes to the existence of a hostile work environment resulting in gender discrimination. As we determined above, there is a total absence of any evidence suggesting gender discrimination, therefore Blackford cannot maintain a hostile work environment claim based on such.

Not only are the events that Blackford alleges lacking in gender or racial discrimination motivations, but the incidents are not severe or pervasive. In establishing that the alleged harassment was sufficiently severe or pervasive to alter the conditions of a plaintiff's employment, the plaintiff "must show that her work environment was both subjectively and objectively offensive; 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' " *Gentry v. Export Packaging Co.*, 238 F.3d 842, 850 (7th Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). Courts examine a variety of factors when evaluating whether a workplace is hostile, including the frequency of the discriminatory conduct, its severity, whether the conduct is physically threatening, humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's job performance. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). All three incidents were related to Blackford's workplace responsibilities. None of the incidents dealt with job requirements that forced Blackford to deviate from his job responsibilities in such a manner to be grossly outside of his job description. The discourse between Blackford and Hatzold did not involve physical threats, humiliation or even offensive language. Based on the totality of circumstances, Blackford has failed to demonstrate that the alleged harassment was sufficiently severe or pervasive to establish a viable hostile work environment claim. *See Ford v. Minteq Shapes & Servs.*, 587 F.3d 845, 848 (7th Cir. 2009) (Title VII is not a general civility code and courts will not find liability based in the sporadic use of

abusive language). The Court grants FedEx's motion for summary judgment on Blackford's hostile work environment claim.

## II. IHRA

The IHRA provides a comprehensive scheme of procedures and remedies for redressing human rights violations. 775 ILCS 5/1–101 *et seq.* In analyzing discrimination claims under the IHRA, Illinois courts have adopted the framework used by federal courts in addressing discrimination claims under Title VII or the ADEA. *Zaderaka v. Ill. Human Rights Com'n*, 545 N.E.2d 684, 687 (Ill. 1989). As the Court previously determined, Blackford has not established a discrimination claim under Title VII and therefore, fails to establish his IHRA claim.

## CONCLUSION

For the aforementioned reasons, FedEx's motion for summary judgment is granted on all counts of Blackford's complaint.